UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 13-10709-RGS

KEVIN D. HICKS

v.

KELLY A. RYAN, et al.

<u>MEMORANDUM AND ORDER</u>

May 9, 2013

STEARNS, D.J.

<u>INTRODUCTION</u>

This is a <u>pro se</u> action for equitable relief and monetary damages resulting from the alleged violation of Kevin Hick's ("Hicks") constitutional rights. Kevin Hicks is a state prisoner in custody at MCI–Shirley.  Hicks brings this action pursuant to the federal Civil Rights Act, 42 U.S.C. § 1983, and the Massachusetts Civil Rights Act, M.G. L. Ch. 12, §§ 11(H)-(I) , seeking monetary damages and declaratory relief under the Massachusetts declaratory judgment statute, M.G.L. ch. 231A. Complaint ("Compl."), ¶ 1.  His complaint includes a claim pursuant to Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131 et seq. <u>Id.</u> at ¶ 78.  Hicks alleges that defendants, various prison officials and employees, have violated his rights concerning disciplinary proceedings, religious observance, medical care, employment and confiscation of his property.

In connection with this action, Hicks has filed: (a) Motion for Leave to Proceed in forma pauperis (Docket No. 2); (b) Motion to Appoint Counsel (Docket No. 5); (c) Motion for Temporary Restraining Order (Docket No. 6); (d) Motion to Dispense with Requirement for Security (Docket No. 11); (e) Motion for Service by U.S. Marshal (Docket No. 12); (f) Motion to Proceed on Handwritten Motions (Docket No. 13); (g) Motion to Expedite Depositions (Docket No. 15); and (h) Motion for Speedy Trial/Hearing Due to Health (Docket No. 16).

For the reasons set forth below, the Motion for Leave to Proceed in forma pauperis is

allowed and plaintiff is assessed an initial, partial filing fee; the Motion to Appoint Counsel is denied without prejudice; the Motion for Temporary Restraining Order and/or Preliminary Injunction is denied; the clerk shall issue a summons for service of the complaint on defendant Ryan as to plaintiff's First Amendment Free Exercise claim; and within forty-two (42) days of the date of this Memorandum and Order, Plaintiff shall show cause why the remaining claims should not be dismissed, or in the alternative, he shall file an amended complaint curing the pleading deficiencies noted herein.  Plaintiff's motions to expedite depositions and for speedy trial are denied and the Court will permit plaintiff to proceed on handwritten motions and to have service of the complaint made by the United States Marshals Service on defendant Ryan.

## BACKGROUND AND FACTUAL ALLEGATIONS

On March 27, 2013, Kevin Hicks filed a forty-page, handwritten complaint seeking equitable and monetary relief.  The defendants are Kelly A. Ryan, Superintendent, MCI-Shirley; Karen Dinardo, Assistant Superintendent, MCI-Shirley; Luis Spencer, Commissioner, Massachusetts Department of Correction; UMass Correctional Health; Matthew Arpano, correctional officer; Ms. Powers, correctional officer; Matthew Tolman, correctional officer; Timothy Bariamis, correctional officer; Aimee Grenier, nurse; a certified nursing assistant identified as Lucia and a John Doe defendant.  See Compl., ¶¶ 3-12A.  By footnote to the case caption of his complaint, plaintiff states that a John Doe Defendant is "to be amended to suit once it is discovered who medically approved Hicks for SMU [Special Management Unit] Lockup in the hole."  Id. at  p. 1.

Hicks explains that he uses a wheelchair because he is "a leg amputee," and that he will "use crutches sometimes."  Id. at ¶¶ 39, 79.  Hicks alleges that he has "liver failure."  Id. at ¶ 79.  During the incidents in question, he was living in the infirmary at MCI Shirley, id. at ¶ 13, and he anticipates being transferred to Old Colony Correctional Center for alleged disciplinary infractions.  Id. at ¶ 2.  Hicks states that he "never had a violent incident in the 35 years of [his] imprisonment at age 19."  Id. at ¶ 59.  Hicks believes that the recent disciplinary proceedings will adversely affect

his request for commutation and states that he deserves parole after 35 years of imprisonment for armed robbery.  Id. at Doc. 1-1, p. 18.

Hicks contends that MCI Norfolk is better suited to treat his liver failure, but it does not have wheelchair ramps for plaintiff and so he expects to be transferred to Old Colony Correctional Center. Id. at ¶79.  He alleges that at his "transfer trial," his medical status was changed to status of "D." Id. at ¶ 83(P).

Hicks complains that the defendants failed to accommodate his request to attend religious services.  He alleges that "Warden Ryan and her guards . . . [denied plaintiff] the ability to go to church when [he] had been doing so for months according to policy but Warden Ryan passed out a new memo forbidding me and others in wheelchairs from attending church services and now all we had was visits from nuns every couple of weeks with a 2-5 minute prayer in our beds.  Compl., ¶ 62; see also id. at ¶81(E) (plaintiff "was denied his religious attendance at church services and permitted unequal participation by only seeing nuns for 5 minutes; *yet some infirmary patients in ADL were still allowed to attend outside church service and Hicks was being forced to leave the ward to enjoy his full 1st amendment rights." ).  Plaintiff complains that he "was locked up five days prior to Christmas [thus] denying him a chance to practice his religious beliefs.  Id. at ¶ 83(G).

Plaintiff alleges that on December 20, 2013, Warden Ryan ordered defendant Arpano to move Hicks to the Special Management Unit until a new bed was available.  Id. at ¶ 56.  At that time, Hicks objected to being moved and asked to go to room 129 which was empty.   Id. at ¶ 57. Hicks alleges that defendant Arapano grabbed him, pushed him in his seat, and said "watch it." Id. at ¶  59.  Hicks complains that Warden Ryan stated that Hicks "can't get along with people."  Id.

Hicks alleges that he was moved to the SMU ("Special Management Unit"), and was not permitted to move to Room 129, because the staff used Room 129 as a staff lounge to watch television.  Id. at ¶ 83(K).   Hicks complains that the defendants "allowed Hicks to live in squalor and feces and conditions not handicap accessible."  Id. at ¶ 83(E).

Hicks complains that Warden Ryan was retaliating against him for his complaints.  Id. at ¶ 58.  Hicks complains that Warden Ryan "and her guards" harass him "in mean, petty ways" by preventing wheelchair-bound inmates from attending church services, id. at ¶ 62; and banning the use of Walkmans after Hicks ordered a Walkman from the commissary.  Id. at ¶ 63.

Plaintiff complains that defendant Dinardo tried to get Hicks to voluntarily move out of the hospital.  Id. at ¶ 69.  Hicks alleges that he was intimidated by defendant Powers when she told him to leave hospital as he didn't need it.  Id. at ¶ 83(A).  Hicks alleges that  his medical files were made available to Powers and others.  Id. at ¶ 82(B).

In his complaint, Hicks describes two incidents for which he was disciplined on or about December 1, 2012.  The first incident occurred when Hicks assisted an elderly Alzheimer patient in shaving his neck.  Compl., ¶¶ 13-16.  The patient, Mr. Simontin,  subsequently slipped and Hicks was accused by nurses Grenier and Lucia of assaulting Mr. Simontin.  Id. at ¶¶ 17-18.  The second incident occurred when Hicks, in an effort to assist a patient who had slipped in his bed, unplugged the bed when the patient was in a comfortable position.  Id. at ¶¶ 49-50.  The patient called nurse Cynthia and complained that Hicks would not plug the bed back in.  Id. at ¶ 52.

Hicks denied shaving the patient when questioned by defendant Arpano on Tuesday, December 4, 2012, despite the fact that the film showed Hicks shaving the patient.  Id. at ¶¶ 22- 23.  Hicks complained that he was targeted because of the complaints and grievances he had filed with Warden Ryan. Id. at  ¶ 23.  Despite his complaints, Hicks was placed in "the Bubble" in cell 109. Id. at  ¶ 24.

Despite his explanations, Hicks was found guilty of insolence and of unplugging "medical devices" i.e. the other patient's bed. Id. at ¶¶ 55, 72.  Hicks complains that the disciplinary officer and others altered facts and denied plaintiff due process. Id. at  ¶82(D).  Hicks alleges that he was denied an opportunity to confront any witnesses or accusers because he "was denied reports form the guards on the scene on Dec. 18, 2012 but officers and Arpano says (sic) no reports exist. Id. at

¶ 73.    He complains that he was "denied exculpatory evidence at his 'trial' for the disciplinary reports."   Id. at   ¶ 83(P).   Hicks alleges that defendants Grenier and Lucia "lied about Hicks' assaulting Simotin."   Id. at   ¶ 83(C).   Hicks alleges that "phone tapes were not investigated," id. at ¶ 83(K), and that nurse Cynthia and Guard Chester "were witnesses, but their testimony in reports were not sought nor provided."   Id. at ¶ 83(L).   Hicks complains that the disciplinary officer denied Hicks' request for a continuance in order to questions certain employees and to request statements of others.   Id. at ¶ 74.   Hicks complains that the "assault charge" was not filed within one day as required by the Code of Massachusetts Regulations and that he was denied a speedy trial.   Id. at ¶¶ 75, 80(A).

Hicks contends that Powers and other staff were not going to discipline Hicks and would have been satisfied with a warning, but defendants Arpano and Ryan sought to harrass Hicks despite the fact that lesser punishments were available.   Id. at ¶ 75.   Hicks complains that the "redacted 'informant' report is done in the dark to avoid a defense and to give the impression that a secre truth exists yet nurse Aimee's information can only be mere speculation comparable to myth and witch trials violating the 8th Amendment and Due Process."   Id. at   ¶ 76.

Hicks believes that he was subjected to disciplinary proceedings because he previously complained of mistreatment of patients by certain nurses.   Id. at ¶ 21.   Hicks repeats this allegation and alleges that he was targeted by defendant Arapao because of complaints and grievances that Hicks previously filed with Warden Ryan.   Id. at ¶ 23.   As recently as December 4, 2012, Hicks observed nurse Lucia's mistreatment of a patient and complained that another patient named Casiano "ruled" Powers and the other nurses.   Id. at ¶¶ 24-29.   Hicks contends that a guard instructed a patient worker not to provide Hicks with ice.   Id. at ¶ 30.

Hicks alleges that initially, he was going to be locked in "the Bubble" in Room 109, but after he objected, his lock-up was postponed until Monday when the surveillance film could be reviewed. Id. at ¶¶20-21.

Hicks alleges that grievance officer Timothy refused plaintiff's grievances, id. at ¶ 68, and that his grievances were dismissed.  Id. at ¶ 82(C).

Hicks complains that he was treated differently that white and Latino inmates.  He alleges that a white patient was not given a disciplinary report for the same assault as Hicks.  Id. at ¶81(A).  Hicks alleges that a Latino patient was not tried or investigated as was Hicks.  Id. at ¶ 81(B).  Hicks complains that he was denied a television while in Room 109, others were allowed this right.  Id. at ¶ Id. at 81(E).

Plaintiff alleges that defendant Tolman subjected him to discrimination and "rushed to judgment and intimidated Hicks by warning him to shut up and tried to lock Hicks in Room 109.  Id. at ¶ 83(B).

Plaintiff alleges that defendants Grenier and Lucia "denied medical care to Hicks," "lied about Hicks' assaulting Simotin," harassed him and subjected him to discrimination.  Id. at ¶83(C).  Plaintiff alleges that defendant Spencer, as Commissioner of Correction, "did nothing to protect Hicks or stop [the] harassment and discrimination.  Id. at ¶ 83(D).

Plaintiff complains that "Defendants lied about Hicks and put him in fear of his life by denying him a watch to monitor his sleeping that could easily lead to a coma."  Id. at ¶ 83(G).

Plaintiff complains that he has been denied access to the courts because (a) the computers in the hospital didn't work, (b) ¶ 66; he had limited access to the one-cell library that services over 70 prisoners. ¶ 66; (c) grievance officer "refused plaintiff's grievance delaying with hair-splitting minutiae," ¶ 68, (d), 82(C);  although plaintiff's legal papers for twenty-one years earlier were returned, plaintiff's more recent legal papers were taken with his bag ¶ 67; (e) plaintiff's legal papers were confiscated and lost, ¶ 81(D); defendant Arpano denied plaintiff's access to the courts when he intimidated plaintiff by "rabbing [him by his] shoulder, pushing [him] down in [his] seat" and warning him to  "watch it."  Id. at ¶ 59.  Plaintiff complains that defendant Arpano subjected Hicks to "double jeopardy" because another prison employee named Chester had "already informally

warned Hicks." Id. at ¶ 82(E).

Plaintiff complains that he was "cleared medically for lockup by nurses Aimee and Lucia" and argues that they were unqualified to make such a determination and that only Dr. Marie Angelis could make such a determination. " Id. at ¶ 77.

Plaintiff complains that when he was moved to the SMU on the morning of December 20, 2013, the following items were taken from him: his "black sweatshirt and watch," id. at ¶ 60; his legal papers, medication, and a leg stocking,. Id. at ¶ 61. Plaintiff complained in writing to U.Mass. Correctional Health and Warden Ryan about the loss of his medication and leg stocking because it cause him approximately two months of "dizzy spells, boiling sinuses, itching, swollen foot." Id. at ¶ 61. Plaintiff complains that the Walkman he had ordered from the commissary was never delivered to him. Id. at ¶ 64.

Plaintiff alleges that he was placed in a handicapped cell, number 12, in the SMU. Id. at ¶ 60. He complains that he needed his watch to see the passage of time in the event he slipped into coma. Id. He was then removed from cell #12 and placed in a "regular" cell #11 where his wheelchair was cramped. Id. at ¶ 61.

Plaintiff complains that he was denied adequate medical care. Id. at ¶ 80(C). He alleges that he was moved to the SMU without his leg stocking and that his leg would swell and he would scratch it and it would bleed. Id. at ¶ 83(O). He complains that while in cell #11, he was denied sheets, a blanket, a towel, a washcloth, his walkman and access to library. Id. at ¶ 83(F).

On December 18, 2012, Hicks was moved to room 127. Id. at ¶ 32. He alleges that he was not returned to his room, number 125, because a patient who had previously threatened Hicks had been moved to that room. Plaintiff was placed in Room 127 with an alleged Latino gang member who told Hicks that "he runs this bitch" and that Hick couldn't watch television. Compl., ¶ 32. Hicks alleges that he protested and that Officer O'Toole interceded by taking the remote control and warning the Latino patient. Id. at ¶ 32. Hicks alleges that he was subsequently threatened by the

Latino patient.  Id. at ¶ 33.

Plaintiff complains that he was "denied a job under the "American With Disabilities Act." Compl., ¶ 78, id. at ¶ 82(A) ("he was denied a handicap job he had earlier in Block B-Z; discrimination.").    He alleges that the job assignment officers failed to respond to his request to return to the job he performed prior to his hospitalization.  Id. at ¶ 65.

In his complaint,  Hicks seeks relief as follows: (1) a declaratory judgment that defendants violated the United States; (2) additional law library access and medical care and an order enjoining harassment and discrimination; (3) to have handicapped ramps installed at MCI Norfolk and to be returned to the infirmary at MCI Shirley (room 125, 127 or 129) with access to television, church services and an outside law library; (4) return of Hick's papers and books and preservation of evidence and phone and videotapes; and (5) monetary damages.  See Compl. (1-1) pp. 18-20.

## DISCUSSION

### I.    The Motion to Proceed In Forma Pauperis

Based on the information contained in Hicks' application to proceed in forma pauperis and the prison account statement submitted therewith, the Court grants the motion to proceed in forma pauperis.  The grant of this motion only relieves Hicks of the obligation to prepay the filing fee.

Unlike other civil litigants, prisoner plaintiffs are not entitled to a complete waiver of the $350.00 filing fee, notwithstanding the grant of in forma pauperis status.  Based on the information contained in the prison account statement, the court will direct the appropriate prison official to withdraw an initial partial payment from the plaintiff's account, followed by payments on a monthly basis until the entire $350.00 filing fee is paid in full. See 28 U.S.C. § 1915(b)(1)-(2).

In accordance with 28 U.S.C. § 1915(b)(1), the Court assesses an initial partial filing fee of $17.39.  The rest of the filing fee, $332.61, shall be collected in accordance with 28 U.S.C. § 1915(b)(2).

### II.    Screening of the Complaint

When a plaintiff is permitted to proceed without prepayment of the filing fee, summonses do not issue until the Court reviews the complaint and determines that it satisfies the substantive requirements of 28 U.S.C. § 1915.  Similarly, under 28 U.S.C. § 1915A, prisoner complaints in civil actions that seek redress from a governmental entity or officers or employees of a governmental entity are subject to screening.  Both § 1915 and § 1915A authorize federal courts to dismiss complaints if the claims therein lack an arguable basis in law or in fact, fail to state a claim on which relief may be granted, or seek monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2); Neitzke v. Williams, 490 U.S. 319, 325 (1989); Denton v. Hernandez, 504 U.S. 25, 32-33 (1992).

In conducting a review of a complaint filed by a litigant proceeding in forma pauperis, the court reads plaintiff's complaint with "an extra degree of solicitude," Rodi v. Ventetuolo, 941 F.2d 22, 23 (1 st Cir.1991), due to his pro se status, see id.; see also Strahan v. Coxe, 127 F.3d 155, 158 n. 1 (1st Cir. 1997) (noting obligation to construe pro se pleadings liberally) (citing Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972)).

As discussed below, upon such review, Plaintiff's First Amendment Free Exercise claim against defendant Ryan in her individual capacity survives summary dismissal.  However, all of the remaining claims are subject to dismissal for the reasons set forth below.

III.    Plaintiff's Employment Claim Under the Americans With Disabilities Act

Hicks alleges that an unnamed job assignment officer failed to respond to Hicks' letter seeking placement at a job he had done before he was hospitalized; i.e. cleaning the phones. Compl., at ¶ 65.  Plaintiff complains that he was "denied a job under the "American With Disabilities Act."  Compl., ¶ 78, id. at ¶ 82(A) ("he was denied a handicap job he had earlier in Block B-Z; discrimination.").

The ADA contains three titles which address discrimination against persons with disabilities in three contexts. To the extent that Mr. Hicks sues Defendants in their official capacities, "[t]he

ADA's Title II, prohibiting discrimination in the distribution of public services, is the only title" that plaintiff's allegations arguably implicate. White v. State of Colo., 82 F.3d 364, 367 n. 5 (10th Cir.1996).

Title II of the ADA, the provision at issue here, prohibits discrimination against persons with disabilities by "public entities" which includes a state's correctional facilities. Pennsylvania Department of Corrections v. Yeskey, 524 U.S. 206, 209–10, 118 S.Ct. 1952, 141 L.Ed.2d 215 (1998). To state a plausible ADA claim, a plaintiff must demonstrate that: "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability." Parker v. Universidad de P.R., 225 F.3d 1, 5 (1 st Cir.2000).

Here, plaintiff simply complains that an unnamed officer failed to respond to Hicks' letter seeking a job placement. This allegation, without more, fails to state a cognizable ADA claim.

IV.    Legal Standard Under 42 U.S.C. § 1983

Section 1983 creates a cause of action against those who, acting under color of state law, violate federal constitutional or statutory law. See 42 U.S.C. § 1983.[1] To prevail, a plaintiff must show that "the challenged conduct [is] attributable to a person acting under color of state law" and that "the conduct must have worked a denial of rights, secured by the Constitution or by federal law. Soto v. Flores, 103 F. 3d 1056, 1061 (1st Cir.), cert. denied, 522 U.S. 819, 118 S.Ct. 71, 139 L.Ed.2d

---

[1] 42 U.S.C. § 1983 provides that:
> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law ....

32 (1997).

Here, although Defendants were acting under state law, Plaintiff's claims are reviewed to determine if they allege facts indicating that Defendants deprived Plaintiff of a constitutional or federal statutory right.  To the extent that Hicks is suing the individual Defendants in their official capacities, he is actually attempting to impose liability on Defendants' employer, the Massachusetts Department of Correction.  See Hafer v. Melo, 502 U.S. 21, 25 (1991) (suit against a state official in his or her official capacity is treated as a suit against the state).  States and state officials sued in their official capacities are not "persons" within the meaning of § 1983.  Will v. Michigan Department of State Police, 491 U.S. 58, 71 (1989). Absent a waiver, the Eleventh Amendment forbids a suit for damages against a state in federal court. Ambus v. Granite Board of Education, 995 F.2d 992, 994 (10th Cir.1993) (citing Edelman v. Jordan, 415 U.S. 651, 663 (1974)).  To the extent that Hicks seeks monetary damages against Defendants in their official capacities, his claims are subject to dismissal.

To the extent that Hicks is suing Defendants in their individual capacities, personal capacity suits pursuant to § 1983 seek to impose personal liability upon a government official for actions he or she takes under color of state law. Kentucky v. Graham, 473 U.S. 159, 164 (1985). The Eleventh Amendment does not bar actions for damages against state officials in their individual capacities. Graham, 473 U.S. at 165–67.

Moreover, "[i]t is well-established that 'only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable'" under § 1983.  Velez-Rivera v. Agosto-Alicea, 437 F.3d 145, 156 (1st Cir. 2006) (quoting Cepero-Rivera v. Fagundo, 414 F.3d 124, 129 (1st Cir. 2005)).   "[In civil rights actions], 'supervisors are not automatically liable for the

misconduct of those under their command.  A plaintiff must show an affirmative link between the subordinate [employee] and the supervisor, whether through direct participation or through conduct that amounts to condonation or tacit authorization.'" Velez-Rivera, 437 F.3d at 156 (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)).  See Pinto v. Nettleship, 737 F.2d 130, 132 (1st Cir. 1984) (liability can only be imposed upon officials who were involved personally in the deprivation of constitutional rights).  See also Pineda v. Toomey, 533 F.3d 50, 54 (1st Cir. 2008) (discussing test for liability of supervisory officials).

V.      Review of Section 1983 Claims

A.      Section 1983 Claims that Fail to State Claims on Which Relief May Be Granted

1.      Loss of Property

Hicks alleges that several items of property were taken from him during his transfer to the Special Management Unit.  Compl., ¶ 60 (sweatshirt and watch); ¶ 61 (legal papers, medication, leg stocking); ¶ 64 (walkman-ordered but not delivered).  Hicks alleges that grievance officer Timothy Bariamis refused his grievances, id. at ¶ 68, and that his grievances were dismissed.  Id. at ¶ 82(C).  He complains that the grievance officer "refused plaintiff's grievance delaying with hair-splitting minutiae."  Id. ¶ 68; (d), 82(C).

Plaintiff's loss of property claim implicates the due process clause of the Fourteenth Amendment.  The Due Process Clause provides "nor shall any State deprive any person of life, liberty, or property, without due process of law." U. S. Constitution, Amend. XIV. Here, plaintiff implies that he was deprived of his personal property without due process.

Even assuming that Hicks possesses a property interest sufficient to warrant protection under the Due Process Clause, his claim is subject to dismissal under the Parratt-Hudson doctrine. See

Parratt v. Taylor, 451 U.S. 527, 541-43, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) (rejecting due process claim based on negligent loss of property where defendants' act was "random and unauthorized" and there was an adequate state postdeprivation remedy to redress the loss), overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); Hudson v. Palmer, 468 U.S. 517, 533, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (extending the ruling in Parratt to intentionally caused losses of property).   The doctrine arises from the fact that in circumstances where a government official's actions are random and unauthorized, "additional pre-deprivation safeguards would have little value in preventing an erroneous deprivation of the

protected interest."   Mard v. Town of Amherst, 350 F.3d 184, 193 (1st Cir. 2003).

Here, Hicks has an adequate post-deprivation remedy pursuant to the Department of Corrections ("DOC") grievance procedure.   The DOC has established an administrative grievance procedure.   See 103 C.M.R. §§ 491.00 et seq. The policy provides that an inmate may file a grievance by completing a grievance form and filing it with the Institutional Grievance Coordinator ("IGC"), who then processes the grievance. See 103 C.M.R. § 491.09. An inmate whose grievance has been denied by the IGC may appeal to the Superintendent.   See 103 C.M.R. § 491.12.   Plaintiff filed a grievance and appeal with respect to his claim regarding the Walkman.   See Pl. Exhibit B6, Docket No. 8, p. 6 (Hicks will receive walkman when released from SMU).   The DOC grievance procedure, as well as Massachusetts tort law, affords plaintiff meaningful post-deprivation remedies. Although plaintiff complains of the "hair-splitting minutiae" involved in the grievance procedures, he has not alleged facts showing that the grievance procedures were inadequate.

2.    Medical Issues

Plaintiff complains that when he was transferred to the SMU, his medication was taken away and he was denied adequate medical care. Compl., ¶¶ 61, 80(C).  Hicks complains that his watch was taken away and that he needed it to determine the passage of time because he might slip into a coma.  Id. at ¶ 60.  He complains that he was removed from a handicapped cell and placed in a cell where the wheelchair was cramped.  Id. at ¶ 61.  Hicks alleges that he "complained in writing to U.Mass. Correctional Health and Warden Ryan and others."  Id.   He complains that defendant Aimee and Lucia were not qualified to clear him for lock-up.  Id. at ¶ 77.

To the extent Hicks complains that the defendants violated his Eighth Amendment rights by refusing to provide adequate medical care, his claim is subject to dismissal.  Only "deliberate indifference" to the serious medical needs of prisoners violates the Eighth Amendment.   Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).  Deliberate indifference is "conduct that offends evolving standards of decency in a civilized society."   DesRosiers v. Moran, 949 F.2d 15, 18 (1st Cir.1991) (citations omitted). Deliberate indifference may be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed."  Estelle, 429 U.S. at 104–05.

Here, Hicks offers vague, if not contradictory, allegations concerning the lack of medical care.  To the extent he complains that his medication was taken, he states that he was told that "he had never been on Nasalide" and that he "never had prescriptions for [other medications including the leg stocking]."  Compl., ¶ 61.  Plaintiff states that a "couple of months later" he was "given some of" his medication.  Id.  Even with a liberal reading of the complaint, Hicks does not allege facts from which the court may infer that any of the defendants were deliberately indifferent to his serious

medical need.

Additionally, to the extent Hicks asserts the respondeat superior liability of U. Mass. Correctional Heath and Warden Ryan,  these two defendants cannot be held liable under a respondeat superior theory of liability for civil rights claims under 42 U.S.C. § 1983.  See supra, ¶ IV (legal standard under 42 U.S.C. § 1983).  Here, the only link the plaintiff appears to forge between the conduct of these two defendants and the alleged inadequate medical care is their general failure to ensure that Hicks received proper medical care.  These allegations are insufficient to state a claim for refusal to provide medical care and deliberate indifference to his serious medical need.  Thus, the complaint fails to state a constitutional claim concerning his medical care.

   3.   Mishandling of Grievances

Plaintiff's claim concerning the grievance system appears to be solely directed at grievance officer Timothy Bariamis, if anyone, and is insufficient to state a cognizable Section 1983 claim. Plaintiff complains that this defendant delayed plaintiff's grievances "with hair-splitting minutiae" such as the requirement that "only one date and one issue at a time could be grieved."  Compl., ¶ 68. Plaintiff complains that he finds these procedures "taxing[,] confusing and irrational." Id.

There is no constitutionally-protected liberty interest in access to a prison grievance procedure.  See e.g. Adams v. Rice, 40 F.3d 72, 75 (4th Cir.1994) ("[t]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); Piper v. Alford, No. 02–2640–P, 2003 WL 21350215, at *2 (N.D.Tex. 2003) (holding that an inmate "does not have a constitutional entitlement to an adequate grievance procedure" and the ineffectiveness or even absence of a grievance procedure does not give rise to a constitutional claims); see also Leavitt v. Allen, 46 F.3d 1114, 1995 WL 44530, at *2 (1st Cir. 1995) (citing Mann

v. Adams, 855 F.2d 639, 640 (9th Cir.1988)).   The failure to respond to a grievance to the satisfaction of the inmate does not, standing alone, implicate a liberty interest.  Stringer v. Bureau of Prisons, 145 Fed. Appx. 751, 753 (3d Cir. 2005) (prison officials' alleged failure to process or respond to grievances was did not violate inmate's right to due process); Ramirez v. Galaza, 334 F .3d 850, 860 (9th Cir. 2003) (prisoners do not have a liberty interest in a particular grievance procedure).

Therefore, to the extent that the complaint attempts to allege a constitutional violation based on defendant Bariamis' actions or inactions with regard to Hicks' grievance(s), the complaint fails to state a cognizable Section 1983 claim.

4.   Disciplinary Proceedings

Read liberally, the complaint alleges that Hicks was denied due process with respect to two disciplinary reports, the subsequent disciplinary hearings and the guilty findings.  Hicks complains that an unidentified disciplinary officer altered facts and denied Hicks' request for a continuance to gather witness statements.  He complains that defendants Grenier and Lucia lied and that statements from other witnesses were not sought.  Hicks alleges that he was denied exculpatory evidence and that the assault charge was not timely filed.

As an initial matter, the Court notes that the complaint does not name the disciplinary officer as a defendant and fails to assert facts substantiating how any of the defendants violated Hick's constitutional rights during disciplinary proceedings.  "The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property." Wilkinson v.. Austin, 545 U.S. 209, 221 (2005); Romero–Barcelo v. Hernandez–Agosto, 75 F.3d 23, 32 (1st Cir. 1996). Although prisoners retain many constitutional rights, incarceration inherently limits certain

constitutional rights of prisoners.  Under <u>Sandin v. Conner</u>, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), an inmate is entitled to a limited right of due process and/or equal protection only if a challenged action or condition of his or her confinement "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

However, a prisoner does not have a free standing liberty interest in not having a false disciplinary charge leveled against him. <u>See</u> <u>Sprouse v. Babcock</u>, 870 F.2d 450, 452 (8th Cir. 1989); <u>Freeman v. Rideout</u>, 808 F.2d 949, 951 (2d Cir. 1986); <u>cf.</u> <u>Suprenant v. Rivas</u>, 424 F.3d 5, 13–14 (1st Cir. 2005).   Similarly, the writing of a disciplinary infraction does not, standing alone, implicate a liberty interest. <u>See</u> <u>Gay v. Shannon</u>, 211 Fed. Appx. 113, 116 (3d Cir.2006) (issuance of false misconduct report did not deprive inmate of a protected liberty interest).  Moreover, an inmate does not have a liberty interest in maintaining a particular classification level, or from being placed in punitive isolation for a relatively short time. <u>Moody v. Daggett</u>, 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976); <u>Sandin</u>, 515 U.S. at 482–86.

Because Hicks due process claims are asserted against the defendants generally, and the complaint fails to identify the disciplinary officer referenced in the complaint, the due process claims are subject to dismissal.

5.   <u>Access to the Courts</u>

Plaintiff alleges that he was denied access to the courts in a variety of ways.  He alleges that the computers in the hospital didn't work, <u>id.</u> at ¶ 66, and that he had limited access to the one-cell library that services over 70 prisoners.  <u>Id.</u>  Hicks alleges that defendant Arpano intimidated him from access to courts when he warned him to "watch it" and held him in his wheelchair.  <u>Id.</u> at ¶ 82(E).  Plaintiff also complains that the denial of his non-complying grievances denied him access

to the courts.  Id. at ¶¶ 68, 82(C).

"The fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds v. Smith, 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). "An incarcerated prisoner, like any other citizen, has a constitutionally protected right of access to the courts." Lewis v. Casey, 518 U.S. 343, 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996).  To have standing to seek relief under this right, however, a plaintiff must show actual injury by "demonstrat[ing] that a nonfrivolous legal claim ha[s] been frustrated or ... impeded." Id. at 353  (footnote omitted).  see also Boivin v. Black, 225 F.3d 36, 43 n. 5 (1st Cir.2000) ("a prisoner must show actual injury in order to demonstrate a violation of the right of access to the courts").

Here, plaintiff's allegations are plainly inadequate to state a viable access to the courts claim, as Plaintiff fails to specify any actual injury to a nonfrivolous legal action caused by any of the defendants.  Therefore, the complaint fails to state a viable claim for denial of his right to access to the courts.

 6.    Harassment and Intimidation

Hicks complains that he suffered harassment and intimidation by the defendants.  He alleges that Warden Ryan "and her guards" harassed him "in mean, petty ways." Compl., ¶  62.  He complains that Warden Ryan said that he can't get along with other people.  Id. at ¶ 59.  Plaintiff alleges that Assistant Superintendent Dinardo tried to get him to voluntarily move out of the hospital.  Id. at ¶  69.  Hicks alleges that he was intimidated by defendant Powers when she told him to leave hospital as he didn't need it.  Id. at ¶ 83(A). Plaintiff alleges that defendant Tolman "rushed

to judgment and intimidated Hicks by warning him to shut up and tried to lock Hicks in Room 109."

Id. at ¶ 83(B).  Hicks alleges that when he objected to being moved to the Special Management Unit,

defendant Arapano grabbed him, pushed him in his seat, and said "watch it." Id. at ¶¶ 57, 59.

Plaintiff alleges that defendant Spencer, as Commissioner of Correction, "did nothing to protect

Hicks or stop [the] harassment and discrimination.   Id. at ¶ 83(D).

First, although Plaintiff characterizes various defendants' conduct as harassing and

intimidating, "while unprofessional," do not rise to the level of cruel and unusual punishment under

the Eighth Amendment. DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000) (racist and sexually

explicit statements); see also Johnson v. Unknown Dellatifa, 357 F.3d 539, 546 (6th Cir.

2004)(verbal harassment, absent any resulting physical injury, generally does not amount to

infringement of a constitutional right actionable under Section 1983); Shabazz v. Cole, 69 F.Supp.2d

177, 199–201 (D. Mass. 1999).

Further, although Plaintiff alleges that Ad threatened Plaintiff to "watch it," as he does not

provide allegations regarding any injuries that resulted from such threat, Plaintiff's allegations fail

to state a cognizable constitutional claim.

7.     Classification and Placement

Hicks fails to state a violation of his right to due process because he has not alleged facts

from which the court may reasonably infer that he has a liberty interest in avoiding placement at Old

Colony Correctional Center.  Plaintiff alleges that Warden Ryan recommended Hicks for transfer

to MCI Norfolk, which he contends is more qualified to address his liver failure. Id. at ¶79.

However, because MCI Norfolk is not wheelchair accessible, Hicks will instead be transferred to

Old Colony Correctional Center. Id. Plaintiff alleges that on December 20, 2013, Warden Ryan

ordered defendant Arpano to move Hicks to the Special Management Unit until a new bed was available.  Id. at ¶ 56.

However, an inmate does not have a liberty interest in avoiding a particular condition of confinement, including a particular security classification or placement in a particular facility, unless the condition "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Wilkinson v. Austin, 545 U.S. 209, 222-23 (2005) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)); see also id. at 485-86 (holding that prisoner did not have liberty interest in avoiding placement in segregation for 30 days, so no process was due to him prior to placement in segregation). None of the conduct of which Hicks complains presents an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." For example, Hicks does not have a liberty interest in avoiding placement at Old Colony Correctional Center. See Dominique v. Weld, 73 F.3d 1156, 1159-60 (1st Cir.1996) (applying Sandin, and holding that inmate who was participating in a work release program did not have a liberty interest in avoiding transfer to MCI Shirley, because transfer did not affect the duration of his sentence or subject the prisoner to "conditions no different from those ordinarily experienced by large numbers of other inmates serving their sentences in customary fashion").

Also, an inmate does not have a liberty interest in maintaining a particular classification level, or from being placed in punitive isolation for a relatively short time. Moody v. Daggett, 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976); Sandin, 515 U.S. at 482–86.

Therefore, the complaint fails to state a constitutional claim concerning plaintiff's classification and placement.

       8.    Retaliation

To the extent that Hicks asserts that various Defendants have retaliated against him, those claims fail.  In order to sustain a claim of retaliatory discipline, a plaintiff first must allege that he was engaged in conduct that was constitutionally protected.  See Shabazz v. Cole, 69 F. Supp. 2d 177, 197 (D. Mass. 1999).  Next, the plaintiff must establish that the protected conduct was a "substantial or motivating factor" in the prison officials' decision to discipline him.  Id.  Here, plaintiff has not sufficiently alleged facts demonstrating that because he complained about the nurses conduct, such conduct was a "substantial or motivating" factor in any decision to discipline him.  Thus, the claim of retaliatory discipline is subject to dismissal.

       9.     Equal Protection

Hicks complains that he was singled out for punishment compared with white and Latino inmates.  Specifically, he alleges that a Latino patient was not tried or investigated as was Hicks.  See Compl., ¶ 81(B).  Hicks alleges that he was denied a television while lock-up in room 109, but others were allowed this right.  Id. at ¶ 81(E).

An equal protection claim requires "proof that (1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Rubinovitz v. Rogato, 60 F.3d 906, 909–10 (1st Cir. 1995) (citations omitted).  Here, the factual allegations are insufficient to state an equal protection claim against any of the named defendants.

**B.**     Viable First Amendment Claim

Hicks complains that the prison failed to accommodate his request to attend religious services.  He alleges that "Warden Ryan and her guards . . . [denied plaintiff] the ability to go to

church when [he] had been doing so for months according to policy but Warden Ryan passed out a new memo forbidding [Hicks] and others in wheelchairs from attending church services and now all we had was visits from nuns every couple of weeks with a 2-5 minute prayer in our beds.  See Compl., ¶ 62; see also id. at 81(E) (plaintiff "was denied his religious attendance at church services and permitted unequal participation by only seeing nuns for 5 minutes; *yet some infirmary patients in ADL were still allowed to attend outside church service and Hicks was being forced to leave the ward to enjoy his full 1st amendment rights.").  In addition to being denied the ability to attend church services, Plaintiff alleges that he was locked up for the five days leading up to Christmas, thus denying him an opportunity for religious practice.  Id. at 83(G).

The First Amendment's religion clauses provide that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. Amend. I.  The Free Exercise Clause requires that government respect and not interfere with the religious beliefs and practices of those protected by the United States Constitution. See Cutter v. Wilkinson, 544 U.S. 709, 719, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005).  In Cantwell v. Connecticut, 310 U.S. 296, 303, 60 S.Ct. 900, 84 L.Ed. 1213 (1940), the Supreme Court held that the First Amendment was incorporated by the Fourteenth Amendment and, thus, was applicable to the states.

Plaintiff's First Amendment Free Exercise claim against defendant Ryan in her individual capacity survives summary dismissal.  The Clerk will be directed to issue a summons for service of the complaint on defendant Ryan as to this one claim.

VI.     Motion for Temporary Restraining Order and/or Preliminary Injunction

To obtain the extraordinary remedy of a preliminary injunction, a plaintiff must show that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor, and (4) an injunction is in the

public interest. <u>Voice of The Arab World v. MDTV Med. News Now, Inc.</u>, 645 F.3d 26, 32 (1st Cir. 2011).  Likelihood of success on the merits is the critical factor in the analysis. <u>Weaver v. Henderson</u>, 984 F.2d 11, 12 (1 st Cir.1993) (citations omitted).

A party seeking an ex parte temporary restraining order must allege that his injury or loss is "immediate and irreparable" and will occur before the adverse party or that party's attorney can be heard in opposition to the motion. Fed. R. Civ. P. 65(b)(1)(A). Even where a plaintiff makes a showing of "immediate and irreparable" injury, the court cannot issue a temporary restraining order without notice to the adverse parties unless the plaintiff "certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1) (B).  In the Memorandum in Support, plaintiff avers that he "notified defendants of [his] application for a TRO/PI."  <u>See</u> Docket No. 7, p. 4.

In his one-page motion, Hicks seeks to have this Court order Commissioner Spencer and Warden Ryan to return plaintiff's legal papers to him and to "purge" plaintiff's disciplinary reports from his record.  <u>See</u> Docket No. 6. Hicks complains that the disciplinary reports were "written too late and [were written] in violation of 103 CMR time limits of 24 hours."  <u>Id.</u>  He is concerned that these disciplinary reports will adversely affect his request for commutation.  Hicks avers that he has pro bono counsel preparing his petition for commutation.  He also avers that the commutation petition may be his "only chance for freedom" because of his "failing liver and [his experiencing] near-death 4 times within the past year."  Finally, Hicks states that he needs "at least 10 hrs. weekly in the law library" and to "return his number to where it was prior to his disciplinary reports."

However, plaintiff's claims concerning the loss of property and the disciplinary proceedings are subject to dismissal for failure to state a claim upon which relief may be granted.  <u>See</u> <u>supra</u>, ¶ V(A) ( section 1983 claims that fail to sate claims on which relief may be granted).  To the extent plaintiff seeks return of property, his due process claim is subject to dismissal under the <u>Parratt</u>-<u>Hudson</u> doctrine.  <u>See</u> <u>supra</u>, ¶ V(A)(1) (loss of property).  Similarly, under <u>Sandin</u>, the

alleged challenge to his disciplinary proceedings are subject to dismissal.  See supra, ¶ V(A)(4) (disciplinary proceedings).  Plaintiff has not demonstrated a likelihood of success on the merits.  Therefore, the Court will deny Hicks' request for Temporary Restraining Order and/or Preliminary Injunction.

VII.   Motion for the Appointment of Counsel Due to Indigency

Under 28 U.S.C. § 1915(e)(1), the court "may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1).  However, a civil plaintiff lacks a constitutional right to free counsel.  Desrosiers v. Moran, 949 F.2d 15, 23 (1st Cir. 1991).   In order to qualify for appointment of counsel, a party must be indigent and exceptional circumstances must exist such that denial of counsel will result in fundamental unfairness impinging on the party's due process rights.  Id.  To determine whether exceptional circumstances sufficient to warrant the appointment of counsel are present in a case, the court must examine the total situation, focusing on the merits of the case, the complexity of the legal issues, and the litigant's ability to represent him or herself.  Id. at 24.

At this juncture, this Court cannot find that exceptional circumstances exist warranting the expenditure of scarce pro bono resources.  Notwithstanding that Hicks is unable to afford to retain counsel, and notwithstanding that he suffers from ill health, the Court cannot adequately evaluate the merits of this case for purposes of considering appointment until plaintiff files a show cause response or an amended complaint.  Therefore, the Court will deny Hicks' motion for appointment of counsel.

## ORDER

ACCORDINGLY, for the reasons stated above, it is hereby Ordered that:

(1)     Plaintiff's motion for leave to proceed in forma pauperis (Docket No. 2) is allowed;

(2)     Pursuant to 28 U.S.C. § 1915(b)(1), the Court assesses an initial partial filing fee of $ 17.39. The remainder of the fee, $332.61, shall be collected in accordance with 28 U.S.C. §

1915(b)(2);

(3)     The clerk shall issue a summons for service of the complaint on defendant Ryan as to plaintiff's First Amendment Free Exercise claim;

(4)     Defendant Ryan is required to respond to the complaint.  <u>See</u> 42 U.S.C. § 1997e(g)(2);

(5)     Within forty-two (42) days of the date of this Memorandum and Order, Plaintiff shall show cause why his employment claim under the Americans With Disabilities Act and the remaining Section 1983 claims should not be dismissed, or in the alternative, he shall file an amended complaint.

(6)     The Clerk shall send the summons, complaint, and this Order to the plaintiff, who must thereafter serve defendant Ryan in accordance with Federal Rule of Civil Procedure 4(m). The plaintiff may elect to have service made by the United States Marshal Service. If directed by the plaintiff to do so, the United States Marshal shall serve the summons, complaint, and this Order upon defendant Ryan, in the manner directed by the plaintiff, with all costs of service to be advanced by the United States. Notwithstanding Fed. R. Civ. P. 4(m) and Local Rule 4.1, the plaintiff shall have 120 days from the date of this Order to complete service.

(7)     Plaintiff's motion for appointment of counsel (Docket No. 5) is denied without prejudice;

(8)     Plaintiff's motion for temporary restraining order (Docket No. 6) is denied;

(9)     Plaintiff's motion to dispense with requirement for security (Docket No. 11) is denied as moot;

(10)    Plaintiff's motion for service by U.S. Marshal (Docket No. 12) is granted, in part, by permitting plaintiff to elect to have service of the complaint made by the United States Marshal Service on defendant Ryan;

(11)    Plaintiff's motion to proceed on handwritten motions (Docket No. 13) is allowed;

(12)    Plaintiff's motion to expedite depositions (Docket No. 15) is denied; and

(13)    Plaintiff's motion for speeding trial/hearing due to precarious health (Docket No. 16) is denied.

                    SO ORDERED.

                    /s/ Richard G. Stearns
                    UNITED STATES DISTRICT JUDGE